The next case this morning is 522-0533, People v. Steele. Arguing for the defendant appellant is Sarah Curry. Arguing for the state appellee is David Friedland. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only that the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Ms. Curry, are you ready to proceed for the defendant? I am. Thank you. Good morning, your honors. My name is Sarah Curry and I represent Tyrone Steele. I'm going to begin by focusing on the argument pertaining to the admissibility of the prior acts of domestic violence and discuss the sufficiency of the state's evidence in the context of that argument. And then I'll briefly touch on the sentencing argument. Tyrone Steele and his girlfriend, Abigail Adkins, were charged with aggravated battery of a child after their four-month-old son, LS, was admitted to the hospital with brain injuries, broken ribs, and a retinal hemorrhage. Prior to trial, the court granted the state's motion to admit two prior acts of domestic violence that Steele allegedly committed against Adkins as evidence of Steele's intent in this case. However, these prior incidents bore no resemblance to the crime alleged in this case and as such, their admission was more prejudicial than probative. Adkins and Bobbi Damron testified about an incident where Adkins and Steele had gotten into an argument and when Damron came to pick up Adkins to take her and LS to the public aid office, Steele came outside and pushed Adkins, who fell to the ground. Damron testified that she also saw Steele swing at Adkins. Adkins also testified that when she was five months pregnant with LS, Steele knocked her down. These incidents bear no similarity to the charged offense and should not have been admitted. The trial court found that these incidents were relevant to show Steele's intent in this case, but there's nothing about these incidents that established Steele's intent to harm his child. The prior incidents involved Steele and Adkins, two adults involved in a consensual, intimate relationship. The incidents between them stemmed from arguments that turned physical in nature. The charged offense, on the other hand, involved Steele's four-month-old child. Partner abuse being vastly different than child abuse. The evidence of the prior incidents of domestic violence was more akin to inadmissible character evidence that Steele was angry and violent, and in fact, that is how the trial court used this evidence. The court found that, quote, Mr. Steele had serious anger issues, unquote. The court also placed considerable weight on the evidence, concluding that, quote, Mr. Steele and Ms. Adkins had a stormy relationship and Mr. Steele had physically abused Ms. Adkins. Thus, the court did not use these prior incidents to assess Steele's intent in this case. Rather, it used these incidents to determine that Steele was angry and violent and therefore more likely to commit this offense. Steele contends that the evidence presented at trial was insufficient to sustain the conviction, but at a minimum, the evidence was closely balanced, and the improper admission of the other crimes evidence could have hit the scale for the finding of guilt. Steele and Adkins were the primary caretakers of LS, and Steele denied doing anything to hurt LS or knowing how LS being hurt is. Adkins testified at trial that she did not see Steele do anything to hurt LS, which was consistent with her first two statements to the police. Adkins was impeached with her third statement to police where she said that she saw Steele throw a bottle at LS's head, slung LS on the couch, used a pillow to cover LS's mouth, and would press down as hard as he could on LS's chest. However, shortly after making the statement, Adkins wrote a letter to the state's attorney stating that everything she said in this third statement was not true and that she had only made the statement because her father had told her if she said somebody else caused the injuries, she would get out of jail. Taking Adkins' statements and testimony together, she is wholly incredible. Moreover, Dr. Timothy Cutts was not able to provide specifics about how LS sustained his injuries and admitted that even the allegations from Adkins' third statement do not cover all of the injuries. While the state was able to prove that LS sustained significant injuries, it was unable to prove that Steele was the person responsible for causing these injuries. It is not enough that Steele had the opportunity. Here, the other crimes evidence rendered the trial unfair and allowed the state to turn weak in evidence. Pointing to the sentencing issue, I'd first like to apologize to the court for my error in my opening brief, stating that Steele was 19 years old at the time of the offense. He was actually only 18 years old at the time of the offense. Tyrone Steele was just 18 years old when his son was born 12 weeks premature with significant health issues. While the offense for which he was convicted was unquestionably serious, the trial court erroneously refused to take into consideration Steele's young age and imposing a 20-year sentence. Illinois courts have consistently held that a court must consider all factors in the aggravation and mitigation  Recently, Illinois federal courts have restricted punishments for juvenile defendants because of the lack of development in their brains, and Illinois courts have recognized that young adults share many of the same characteristics as adolescents, including impulsivity and volatility in emotional situations. Yet here, the trial court flatly refused to consider Steele's youth as a mitigating factor because, quote, the legislature has decided that adulthood starts at age 18 and ends at death. The court found that Steele's lack of brain development was a, quote, very, very poor excuse. The court specifically said that, quote, the age of the defendant is not a factor in mitigation, I don't believe. You don't see it in any. The court seemed to believe that the legislature's determination that an 18-year-old is considered an adult precluded it from considering age as a mitigating factor, but the case law is clear that age should be considered for imposing a sentence. Here, the trial court should have considered Steele's young age not only in regard to how it related to his brain development at the time of the offense, but also in regard to how it increased his potential for rehabilitation. This is especially true where Steele was right at the cutoff from being considered an adult rather than a juvenile. Steele's 20-year sentence is also excessive where he had no criminal background whatsoever, and he had a very unstable upbringing. Steele's lack of any real role model in his life, particularly any male role model, did not set him up for success in becoming a parent at such a young age to a premature baby with health issues. The trial court abused its discretion in refusing to consider Steele's age, and this court should therefore reduce the sentence or remand for resentencing. Thank you. Sorry, somehow I got muted. Ms. Perry, was there any evidence introduced as to the development of brains in juveniles and the impact on community crimes in that regard? Defense counsel did make the argument at the sentencing hearing that because of Steele's young age that his brain had not fully developed, citing or referring to much of the recent case law regarding the brain development and as the brain continues to develop into the early 20s. So that argument was made to the court at sentencing. There was no evidence offered to the court, was there, other than argument? The only specific evidence related to that was that he was just 18 years old, and his upbringing being a very harsh upbringing and how that may have played into his maturity at just 18 years old at the time of the offense. So the court was well aware of his age and his upbringing at the time of the sentencing? The court was aware of his age and his upbringing, but the court specifically refused to consider his age. And would you agree that the testimony given by Abigail was sufficient to convict under Illinois case law, that is, one witness can be sufficient? One credible witness can be sufficient, yes, I would agree with that, but she was not credible at all because of her back and forth. And in reality, the evidence that exonerated Steele was more prolific than the evidence that implicated Steele. She gave two statements to police that did not implicate Steele, and then her trial testimony did not implicate him as well. What exonerated your client? There's no evidence that he caused these injuries. Well, he gave some inconsistent testimony about what he did. He didn't give inconsistent testimony. He was trying to help the police officers. I mean, he didn't testify at trial, but in his statements, he was more like brainstorming with the officers and trying to figure out how his son sustained these injuries. He was being forthcoming about providing CPR the couple of times that L.S. stopped breathing. He talked about L.S. rolling off the couch. He was trying to help the officers figure out how L.S. sustained these injuries. Anything else you want to add? Not at this time. I'll save anything else for rebuttal. Justice Welch, any questions? No questions. Justice McQueen? No questions. All right. Thank you, Mr. Murray. You'll have a few minutes after Mr. Friedland. Mr. Friedland from the state. Thank you, Your Honors. Good morning. My name is David Friedland. I represent the people of the state of Illinois. May it please the court, counsel. I'll briefly address the sentencing issue and then move back to the sufficiency. That's where we ended. I don't think it's accurate to describe that the court refused to consider the defendant's age in its rendering, its fashioning, its sentence. I think it's clear that the defense, that the court absolutely did consider his age, recognize that he was 18. In fact, stated, I realize that it takes a while or brain development. I realize young people do silly, stupid things. And then the court, and this is a quote, but this was something that was not just one act. And this was more of a series or more of a continuing situation. We don't know. And so from that, the court said, well, I'm not going to accept that being 18 was an excuse for this. And basically did consider that, but found that it wasn't going to warrant his age, didn't warrant a lesser sentence. So I don't think it's accurate that it refused to consider his age or his youth or his family upbringing, which was outlined in the PSI. It just found that it wasn't a mitigating factor and therefore didn't merit or warrant a lesser sentence when it ultimately pronounced a 20-year sentence. And that 20-year sentence was absolutely justified here. Now turning to the sufficiency of the evidence, counsel is arguing that Miss Adkins' statement is so incredible that the recantations and flip-flopping make her so incredible. It is the trier of facts job to judge Abigail Adkins' testimony. And she was credible. And the defendant himself acknowledged that there were two people, there are only two people that could have caused these injuries. So by counsel's characterization of him brainstorming to help the police actually exonerates him. I mean, he was lying. We all know he was lying. He was trying to deflect responsibility. And I think what's most apparent from that is that he never blamed Abigail Adkins. And nor could he. He didn't offer her up to the police. If he's brainstorming so hard and he tells them that, look, the police are saying it's you or it's Abigail or it's the two of you together. And he doesn't say it's Abigail. He says it's the hospital personnel or from hitting him or an interracial couple. He offered that as an excuse to the police. Those are false exculpatory confessions that are indicative of his guilt. And for him not to point the finger at Abigail, who's culpable here as well, shows that there was nothing that exonerated him, nor could he. And at trial, they didn't ask those questions on cross-examination. The prison council really didn't develop a theory that it was Abigail Adkins, nor could she, because as soon as the defendant implicates Abigail Adkins, she's going to turn around and point the finger right back at him because he's guilty. And she did. She did point the finger at him, and that was what the trial court ultimately concluded, and that was the correct conclusion because the defendant clearly committed these offenses. He also acknowledged placing his own hands and giving CPR to the baby, which I don't believe even happened, but he tried to use that as a false exculpatory explanation that these injuries could have been performed or caused when he gave CPR. There's no way that the medical evidence rejected any such conclusion that these injuries were caused from CPR. He said he did CPR that was appropriately. That didn't happen, and he didn't call after he alleged that the baby stopped breathing. They didn't call 911. This defendant is an irresponsible parent who did not want this child. He even acknowledged the abuse. I think that I point your honors to his acknowledgment that, well, if someone has to go down for it, it may as well be me. That's an inculpatory statement. That's an acknowledgment that the abuse occurred, that these injuries were a result of abuse, and at minimum that he is acknowledging that he participated in it, acknowledging that both of them perhaps participated in it. But he didn't develop any – he didn't point the finger at Abigail. He's now arguing only on appeal that potentially Abigail is the only other person that could have committed these offenses, but the trial court heard any sort of that defense and rejected it. His false explanations are certainly indicative of his consciousness of guilt in the trial court. Again, it's the trial court's responsibility, as fitting as the trier of fact, to judge Abigail's credibility. This court's not supposed to do that. We're not supposed to submit – you're not supposed to submit your opinion of the weight of the evidence, the credibility of the witnesses for that of the trial court. And here we ask you to uphold the trial court's well-reasoned determination. What about the prior instances of abuse? Well, the prior instances of abuse, number one, I believe were properly admitted. I think counsel said it certainly wasn't an abuse of discretion to admit those instances of abuse. And the trial court didn't only rely on them or admit them for his intent to commit domestic violence against his son. They admitted it as motive. It was admitted as motive, absence of mistake or accident, as well as intent. And here the defendant is still – How is it motive? How is it motive? I think it's motive – the motive is for the purpose of what the trial court considered this was. It was whether he wanted to have the baby with this and be a father with Abigail Atkins. He didn't. It's obvious that he had a very hostile relationship with Ms. Atkins right around the time that this offense was committed. He pushed her down while pregnant, knowing while she was pregnant she admitted that. She minimized it. And then you have shortly after the baby was born and returned to them from the hospital, the second incident of domestic violence while the baby was five months old, I believe, witnessed by his own aunt, who also reluctantly didn't want to be there. She had to be subpoenaed to testify. But she described what happened where the defendant pulled Abigail out of the car, forced her to the ground. She was turtle covering her own head while he beat her and punched her on the head. She says she slipped because it was raining. And yet the defendant's own aunt, she had to break it up. This is absolutely indicative of the defendant's state of mind at the time that LS received his injuries. So it's absolutely probative of motive. It also absolutely is probative of the absence of mistake because the defendant, again, is claiming that these injuries possibly could have resulted from CPR. Well, you see the way that he acts with LS's mother before and after the pregnancy. You see the text messages. This was not a person who was excited about being a father. This was not a dad. He wasn't taking him to medical appointments. They weren't ensuring that the baby got the appropriate level of medical care. So these two incidents of domestic abuse were properly admitted to show that this wasn't the result, to rebut any inference that this caused by accident, that he was a caring father of this child. So I certainly don't think there was any abuse of discretion in admitting those. Counsel noted that partner abuse is different than child abuse. Well, this goes to show the entirety of the defendant's state of mind in regards to both Abigail, the mother, and the child, and I think that's what the court ultimately concluded and what the court used it for. Regardless of that, the Facebook messages, even though it was admitted in error, the Facebook messages themselves, which were properly admitted, show his state of mind and his anger and his motive that he didn't want to have the baby, the language that he used that your honors can review. This man didn't want to be in this relationship. He didn't want to be a father. He didn't want to be a new father with Abigail Adkins. And so even if you took apart, you excluded or concluded somehow that those prior domestic abuse incidents were admitted in error, you still have the motive. You still show, you still understand he's still the only person that was caring for this baby. There are only two people there. The baby was home two months before it sustained 14 fractures, a skull fracture, a brain bleed, retinal hemorrhages. I mean, these were severe injuries. And going back to whether the 20-year sentence is appropriate, the most important factor is the seriousness of the offense. And this offense was, as the trial court concluded, extremely serious and absolutely merits a 20-year sentence. The trial court properly listened to the evidence, gauged Abigail's testimony, found correctly her implication of the defendant as the only one who inflicted these personal injuries credible. The defendant himself admitted pushing down on the chest. And as Abigail described, she squeezed, he squeezed this baby as hard as he could. He put a pillow over his mouth until he turned blue. There were multiple instances of throwing a bottle that hit the baby on the head. These are serious offenses that absolutely merit a 20-year sentence, which is in no way excessive. We ask your honors to uphold and affirm the conviction. And with that, I'll take any questions from the panel. All right, thank you, Mr. Friedland. Justice Welch? No questions. Justice McHaney? No questions. All right. Ms. Curry, let me ask you at the outset of your argument, the issue with regard to the admission of the two acts of domestic violence, that was not preserved at trial, was it? It was litigated pretrial when the state filed its motion to eliminate to have those prior incidents introduced. So it was fully litigated. It was not included in the post-trial motion seemingly inadvertently by defense counsel. So it's plain error review. Yes, it is. And it is a substantial error. And as I argued, the evidence is closely balanced. And we have the trial court specifically relying on this evidence in finding Steele guilty. And so it would be a plain error. Why isn't this evidence a motive, as argued by the state? His anger during these arguments with his girlfriend does not provide a motive for him to injure his newborn son. The state makes a big deal about the Facebook messages, but does clearly show a singular argument. And Abigail testified that it was a one-time argument based on something wholly unrelated. And his argument was his anger towards Abigail saying, I don't want to have a child with you. It wasn't saying, I don't want to have a child. He was not angry towards this child. He was angry at Abigail Adkins. And so there is no motive that then transfers to this young child. And as the state does in its brief, it doesn't address that these acts are very dissimilar. And as the similarities decrease, the prejudice greatly outweighs the probative value. And these incidences are very, very dissimilar. You have two adults engaging in a verbal argument that becomes physical. And you have a newborn baby sustaining injuries that is not the result of an argument of any sort. The instances are very dissimilar. And as the cases hold, as the dissimilarities increase, the prejudice increases. Doesn't an act of physical violence against a pregnant mother risk injury to the child? But there's no evidence that that had anything to do with this argument. As Abigail testified, she was having an argument. The two of them were having an argument, and he pushed her. That doesn't mean that the argument had anything to do with the unborn child. Yes, she was pregnant, but that doesn't make it an act of violence against the unborn child. In addition, the state argues that Steele didn't implicate Adkins, but we know that Adkins was alone with this child many times. And simply because Steele didn't see Adkins doing anything with the child doesn't mean that Adkins wasn't responsible for these injuries and Steele did not know about it. And just a final note on the sentencing. You know, the state picks pieces out of the court's discussion about age, but it can't go unnoticed that the state or the court specifically said age of the defendant is not a factor in mitigation. The court specifically said that he did not consider age. He didn't think he could consider age because of the legislature's determination that an 18-year-old is an adult. The court specifically and repeatedly said, I'm not going to consider age in mitigation. And in that respect, the court abused its discretion. If there are no other questions, we ask for the relief requested in our brief. All right. Justice Welch? No questions. Justice McNeely? Nothing further. All right. Thank you both for your arguments here today. The matter will be taken under advisement. We'll issue an order in due course. Have a great day.